<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS REYES, | Case No. 20cv9555 (EP) (LDW) |
| Plaintiff, | **OPINION** |
| v. | |
| JET AVIATION/GENERAL DYNAMICS, KYLE O'CONNOR, JIM ERICKSON, ABC CORPS. 1-3 AND JOHN AND JANE DOES 1-10 (FICTITIOUS PERSONS YET KNOWN), | |
| Defendants. | |

**PADIN, District Judge.**

Pursuant to Fed. R. Civ. P. 56, Defendants Jet Aviation Flight Services ("JAFS"), Kyle O'Connor, and Jim Erickson move for summary judgment as to Plaintiff Carlos Reyes's employment discrimination, interference, and retaliation claims brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* D.E. 41-2 ("Mot."). The Court has considered the parties' submissions and decides the motion without oral argument pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78(b). For the reasons set forth below, the Court will **GRANT** Defendants' motion as to the federal FMLA claims, and will **REMAND** the remaining state NJLAD claims to the Superior Court of New Jersey, Bergen County.

I.  **BACKGROUND**

  A. **Factual Background**

JAFS operates as part of the aerospace group of General Dynamics Corporation.[1]  D.E. 41-1 ("Def. 56.1 STMT") ¶ 1.  JAFS' United States' headquarters is in Teterboro, New Jersey.  *Id.*  JAFS supplies flight crews for privately-owned business aircraft.  *Id.*  Reyes was a JAFS employee from September 2003 until July 2019, when his position was eliminated.  Def. 56.1 STMT ¶ 2; D.E. 44-1 ("Pl. Resp.") ¶ 2.

JAFS provided fleet management services, including pilots, ground support staff, and administrative staff, to Vista Jet, which owned its own airplanes.  Def. 56.1 STMT ¶ 18; Pl. Resp. ¶ 18.   Jim Erickson, head of JAFS' Flight Control Department, offered Reyes a client representative position on the Vista Jet team, which he accepted, in 2016.  *See* D.E. 41-6 ("Reyes' Dep.") at 50:5-25; Def. 56.1 STMT ¶ 13; Pl. Resp. ¶ 13.  As a Vista Jet representative, Reyes' direct supervisor was Kyle O'Connor.  Def. 56.1 STMT ¶ 25; Pl. Resp. ¶ 25.

Reyes' position as a Vista Jet representative, was considered a "passthrough" position for a "passthrough employer," Vista Jet.  *See* D.E. 41-19 at 34:8-25.  This meant that, despite being employed by JAFS, all of Reyes' pay was billed back to the client, Vista Jet.  *See id.* at 33:14-34:35.  Thus, when Vista Jet announced its acquisition of XOJet, in late 2018, the JAFS employees on the Vista Jet team, including Reyes, became aware that Vista Jet intended to "basically move everybody [from the Vista Jet team] over to XOJet."  *See* Def. 56.1 STMT ¶¶ 35, 37; Pl. Resp. ¶¶ 35, 37; D.E. 41-8 at 144:13-17.

---

[1] The parties executed a stipulation of dismissal without prejudice as to General Dynamics Corporation before this suit was removed.

Upon learning that Vista Jet would no longer be a JAFS client and Vista Jet's intent to move the Vista Jet team over to XOJet, Reyes applied to two JAFS positions that were not on the Vista Jet team.  Def. 56.1 STMT ¶ 38; Pl. Resp. ¶ 38.  Reyes was not offered either position.  *See* Def. 56.1 STMT ¶¶ 46, 66; Pl. Resp. ¶¶ 46, 66.[2]

On February 25, 2019, Reyes received a letter of intent to hire from XOJet.  D.E. 44-2 ("Pl. 56.1 STMT") ¶ 43; D.E. 45-1 ("Def. Resp.") ¶ 42; D.E. 44-15.  Reyes understood that the basis for the letter was that his position as a Vista Jet representative at JAFS "was gonna move over…to New York and become XOJET."  Reyes' Dep. at 142:6-14.  Reyes' colleagues on the Vista Jet team at JAFS received similar letters.  *Id.* at 145:6-13.

On March 12, 2019, Reyes emailed O'Connor and Benjamin Platek[3] concerning his intent to "us[e] my FMLA leave starting April[] 11[th]."  D.E. 44-17.  While not specified in Reyes' email, the basis for his FMLA leave request was "baby-bonding."  Pl. 56.1 STMT ¶ 49.  Platek testified that he did not communicate with anyone other than Reyes and Sedgwick[4] about Reyes' intent to take FMLA leave.  D.E. 45-4 at 89:18-23.

On March 27, 2019, Reyes followed up with Platek via email, attaching what he referred to as "my FMLA application," but was told[5] he submitted the incorrect form, specifically that "[t]he form [Reyes] sent [Platek] is for NJ Family Leave Insurance[.]"  D.E. 41-14.  In that same responsive email, Reyes was provided with instructions for properly requesting FMLA leave, including "an employee checklist for medical leave of absence[,]" and explaining that he would "need to reach out to Sedgwick (Jet Aviation's LOA administrator) in order to initiate your claim

---

[2] Only the facts necessary to adjudicate Reyes' FMLA claims are recited.
[3] HR Director at JAFS.
[4] Sedgwick was a third-party vendor used by JAFS to manage, approve, and administer the FMLA.  D.E. 45-4 at 89:7-11.
[5] By Rosa Alonso-McCoy, a JAFS Benefits Specialist.

for FMLA.   Sedgwick will determine if you qualify for time off under FMLA for baby-bonding….” *Id.*

Separately, but also on March 27, 2019, as Reyes had taken no independent action, XOJet reached out to Reyes encouraging him to submit his online application for the XOJet position. D.E. 44-16.  Reyes chose not to pursue the position XOJet offered him.  Pl. 56.1 STMT ¶ 44.

The parties dispute whether Platek actually received an April 8, 2019 letter from Reyes, which sought to lodge a complaint about discrimination against male Hispanics in the promotional process at JAFS.  *See* Pl. 56.1 STMT ¶ 61; Def. Resp. ¶ 61; D.E. 44-7 (“4/8/19 Letter”); D.E. 45-4 (“Platek Dep.”) at 110:22-25, 111:2-11.  The parties also dispute whether Reyes ever complained to Platek about discrimination against male Hispanics in the promotional process at JAFS in 2018 or 2019.  *See* Pl. 56.1 STMT ¶ 60; Def. Resp. ¶ 60; Platek Dep. at 108:14-23.

On April 15, 2019, Sedgwick notified Reyes that his request for FMLA leave for baby-bonding had been approved, including that his leave would begin on April 18, 2019 and end on July 10, 2019.  D.E. 41-15.  Reyes subsequently took FMLA leave.

On June 10, 2019, Kara Carrier[6] emailed others in JAFS’ HR Department informing them that Reyes “wants to come back to work before his [return-to-work] approval date of July 10. Except…he was part of VistaJet [sic] and all his colleagues no longer work here.”  D.E. 44-26. On June 11, 2019, Susan Seibel[7] emailed Reyes about his request to return to work before the end of his approved FMLA leave, informing him that “most Vista[Jet] employees [at JAFS] have transitioned to XOJet[,]” as well as that his position would be available only “until the expected

---

[6] HR representative at JAFS.
[7] HR representative at JAFS.

end date or transition of [the Vista Jet] account [to XOJet], which is to be determined." D.E. 44-27.

On June 26, 2019, O'Connor emailed Reyes, providing him with his upcoming work schedule, as well as letting him know that "we are looking forward to having you return to work. I wanted to confirm that the plan is still for you to return on July 11th, as was established when you took your [FMLA] leave." D.E. 44-30. But also that Reyes should "keep in mind as we [JAFS] continue through the [t]ransition to XOJet and more planes come off the JAFS Certificate, the schedule may need to be adjusted based on work load and operational need." *Id.*

In an internal JAFS email thread, in late June/early 2019, concerning Reyes' lack of response to XOJet's emails, O'Connor stated that, "[a]ccording to [Goncalves'] records, [Reyes] did sign a letter of intent and an offer letter was sent to [him] around March 20th. On the 8th of April he had not provided a signed offer letter back. XO[Jet] and [Vista Jet] followed up with no response." D.E. 44-23; *see also* D.E. 44-24 ("He was given a letter of intent from XO[Jet] which he signed but then decided to not sign the offer letter to actually transfer to the new role with XO[Jet].")). In that same thread, O'Connor also stated, "I was told that on April 19th, there was an internal discussion to not pursue or chase [Reyes] further. At that point they considered him not willing or planning to move over [to XOJet]." *Id.* On June 28, 2019, in a separate internal JAFS' email, Mazzola told others in the HR Department that, "[d]uring the 12 weeks that [Reyes] has been out [on FMLA leave], his work schedule changed based on transition of [Vista Jet] planes to XO[Jet] . . . . Yesterday [O'Connor], [Reyes'] supervisor, was speaking with [Goncalves] over at XO[Jet] and found out that the transfer to XO[Jet] is being expedited and [Reyes'] position is no longer needed and we need to terminate him." D.E. 44-24.

On July 3, 2019, Mazzola informed Reyes that JAFS was terminating him.  D.E. 44-35.

Reyes' termination letter provided:

> [T]his letter is to confirm that your last day of work will be July 5,
> 2019 due to the expedited transition of the Vista Jet account to
> XOJet.
> Earlier this year, you and the Vista Jet account team were notified
> that the Vista Jet account would be transitioning to XOJet.  Your
> decision to decline the offer to transfer to XO[Jet] was confirmed on
> or about April 2019.  In addition, you were informed that your
> current position would only be available until that position
> transitioned to XOJet.  While the original timeline was expected to
> go through summer, the entire transition to XOJet happened quicker
> than anticipated….

*Id.*

### B.  Procedural Background

The Complaint was removed from the Superior Court of New Jersey, Bergen County, to this Court based upon federal question subject matter jurisdiction, 28 U.S.C. § 1331, made proper by Reyes' assertion of FMLA claims.[8]  The remaining claims in the Complaint are state claims asserted under the NJLAD.  The Complaint alleges the following claims against Defendants: Count I – national origin discrimination in violation of the NJLAD, D.E. 1, Ex. A. ("Compl.") ¶¶ 52-58; Count II – gender discrimination in violation of the NJLAD, *id.* ¶¶ 59-65; Count III – disability discrimination and failure to accommodate in violation of the NJLAD, *id.* ¶¶ 66-70; Count IV – wrongful termination/retaliation under the NJLAD, *id.* ¶¶ 71-75; Count V – aiding and abetting under the NJLAD, *id.* ¶¶ 76-80; Count VI – untimely, retroactive, and prejudice designation of leave in violation of the FMLA, *id.* ¶¶ 81-92; Count VII – unlawful interference in violation of the FMLA, *id.* ¶¶ 93-95; and Count VIII – retaliation in violation of the FMLA, *id.* ¶¶ 96-97.

---

[8] Diversity jurisdiction is not appropriate, as the parties do not appear to be diverse.  *See* D.E. 1, Ex. A ¶¶ 1-5 (providing that parties are New Jersey citizens); 28 U.S.C. § 1332(a).

Defendants have moved for summary judgment as to all of Reyes' claims. *See generally* Mot. Reyes has opposed. *See generally* D.E. 44 ("Opp'n"). Defendants have replied. *See generally* D.E. 45 ("Reply").

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if a reasonable jury could return a verdict for the nonmovant and it is "material" if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment will not be denied based on [the nonmovant's] mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact." *Ayala v. Assured Lending Corp.*, 804 F. Supp. 2d 273, 278 (citing Fed. R. Civ. P. 56(c)(1)(A); *United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 533 (3d Cir. 1993)); *see also Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (noting that nonmovant must present more than a "mere scintilla" of evidence in his favor). Where the nonmovant bears the burden of persuasion at trial, the movant "may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the [nonmovant's] case." *Ayala*, 804 F. Supp. 2d at 279 (citing Fed. R. Civ. P. 56(c)(1)(B); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

At the summary judgment stage, the reviewing court must not weigh the evidence, but rather it must determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In doing so, the reviewing court must construe reasonable inferences in the light most favorable to the nonmovant. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

### III.    DISCUSSION

#### A.  FMLA Generally

"The purposes of the [FMLA] are to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" *Petras v. IAP Worldwide Servs., Inc.*, 2008 U.S. Dist. LEXIS 105193, at *29 (D.N.J. Dec. 23, 2008) (quoting 29 U.S.C. §§ 2601(b)(1) and (2)).  In that vein, the FMLA provides up to 12 weeks of leave during any 12-month period for employees whose personal or medical circumstances necessitate that they take leave from work in excess of what their employers provide.  *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) (citing 29 U.S.C. § 2612(a)(1)); *see also Foster v. Kennedy Univ. Hosp., Inc.*, 2022 U.S. Dist. LEXIS 134558, at *10-11 (D.N.J. July 28, 2022) (citations omitted) (same).  Moreover, the FMLA prohibits employers from: (1) "interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided [by the FMLA,]" 29 U.S.C. § 2615(a)(1) ("FMLA Interference Claim"); and (2) "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful[ by the FMLA,]" 29 U.S.C. § 2615(a)(2) ("FMLA Retaliation Claim").

Reyes asserts both FMLA Interference Claims, Counts VI and VII, and an FMLA Retaliation Claim, Count VIII.  For the reasons set forth below, summary judgment in Defendants' favor is appropriate.

*1.  Defendants will be granted summary judgment as to Reyes' FMLA Interference Claims*

A plaintiff asserting an FMLA Interference Claim must establish: "(1) he is an eligible employee[;] (2) the defendant is a 'covered employer[;]'" (3) he is entitled to leave under the FMLA[;] (4) he gave the employer notice[;] and (5) the defendant denied or interfered with the plaintiff's FMLA benefits." *Rojas v. Acuity Brands Lighting, Inc.*, 2014 U.S. Dist. LEXIS 87675,

at *39 (D.N.J. June 27, 2014) (citing *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 483-84 (D.N.J. 2002)).  Unlike an FMLA Retaliation Claim, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Phila.*, 430 F.3d 117, 120 (3d Cir. 2005); *see also Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) ("Because [an FMLA Interference Claim] is not about discrimination, a *McDonnell-Douglas* burden-shifting analysis is not required.").

Reyes asserts two FMLA Interference Claims, Counts VI and VII.  The claims are considered together.  Reyes alleges that he was entitled to medical leave under the FMLA based on his own "serious health condition," but that Defendants interfered with that right in April 2008[9] by failing to timely designate his medical leave under the FMLA, as well as that Defendants interfered with Reyes' FMLA right for medical leave in July 2019 by cancelling his "family health insurance benefits [] and terminat[ing his] employment."  *See* Compl. ¶¶ 81-95.  The record evidence belies both claims.

Defendants raise two arguments in support of summary judgment on these claims.  First, to the extent that Reyes' FMLA Interference Claims hinge on his own "medical condition," Defendants contend that Reyes' pleadings are unsupported by the record evidence.  *See* Mot. at 21-22, 25; Reply at 10.  The Court agrees with Defendants.  The Complaint explicitly refers to Reyes' own "serious health condition," rather than baby-bonding, as the basis for his FMLA leave, and pleads that Reyes was "severely prejudiced" and "prevented from securing the psychological counseling and prescription medications required to treat his serious health condition" due to

---

[9] The Court notes that no further references are made to "April 2008" by any party, and because Reyes took FMLA leave in "April 2019," the Court presumes Reyes intended to plead "April 2019."

Defendants' conduct. *See* Compl. ¶¶ 84-92. But there is no record evidence supporting or even referencing these pleadings; in fact, Reyes testified that his basis for seeking FMLA leave was "because [his] daughter [was] born[,]" not his own "medical condition." *See* Reyes' Dep. at 275:15-276:3. And instead of addressing this discrepancy in his opposition, Reyes incorrectly asserts that his "misstating of reasons for FMLA in [the] Complaint" is not a basis for dismissal. *See* Opp'n at 22; *id.* ("It is entirely unclear what legal significan[ce] the Defendants believe the misstatement in the Complaint holds or how it lends support to a dismissal of Mr. Reyes' interference claim.").

To the extent that Counts VI and VII are based on Reyes' request for FMLA leave based on his own "medical condition," Reyes has come forth with no support. Additionally, a "plaintiff may not amend a complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008). Amendment of Reyes' pleadings must be done in accordance with Fed. R. Civ. P. 15. *See id.* Thus, Reyes cannot, at this stage, argue that the basis for his FMLA Interference Claims was different from what he pled in the Complaint. Accordingly, to the extent that Reyes' FMLA Interference Claims, Counts VI and VII, are based on FMLA leave sought for Reyes' own "medical condition," there is no dispute of material fact precluding summary judgment in Defendants' favor.

Second, to the extent that Reyes' FMLA Interference Claims hinge on the FMLA leave he sought and was granted for "baby-bonding," in 2019, Defendants argue that Reyes cannot satisfy the fourth element for an FMLA Interference Claim because he failed to provide proper notice when he applied for FMLA leave. *See* Mot. at 21-23. Thus, any subsequent late "eligibility" or "designation" notice Defendants provided would be excused by Reyes' improper notice. *See id.* Defendants also assert that Reyes cannot satisfy the fifth element for an FMLA Interference Claim

because Reyes was not prejudiced by any late notice provided by Defendants, since his request for FMLA leave was granted. *See id.* at 21, 23-25. The Court agrees with Defendants as to the fifth element.[10]

Specifically, to satisfy the fifth element for an FMLA Interference Claim, an employee must demonstrate that "(1) he was entitled to benefits under the FMLA and (2) that he was denied them." *Rojas*, 2014 U.S. Dist. LEXIS 87675, at *43 (quoting *Sommer*, 461 F.3d at 399). Reyes responds that his FMLA Interference Claims remain actionable, even though he was "granted [FMLA] benefits on April 16, 2019," because prior to granting his leave, Defendants initially "violated Mr. Reyes' FMLA rights when they denied his leave based upon an illegal excuse that Mr. Reyes needed to give a '30-day notice,' and that it had to be first approved by Sedgewick." Opp'n at 21-22. The Court disagrees.

An employee seeking FMLA leave "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave…except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007) (quoting 29 U.S.C. § 2612(e)(2)(B)). There is no evidence that Reyes' requested FMLA leave in Spring 2019 was "unforeseeable," especially given that his daughter "was born September 8, 2018." *See* Reyes' Dep. at 127:21-22. Therefore, Defendants' 30-day notice requirement is in accordance with the FMLA's language.[11]

---

[10] Given that Reyes cannot satisfy the fifth element, Defendants' argument as to the fourth element need not be addressed.

[11] To the extent that Reyes attempts to argue that Defendants attempted to discourage him from taking FMLA leave, this argument fails because he was granted FMLA leave and he has not shown that he has suffered any prejudice from any purported discouragement. *See Griffith v. PNC Bank*, 2015 U.S. Dist. LEXIS 65748, at *46 (D.N.J. May 20, 2015) (concluding "the evidence does not suggest that [the plaintiff] was ever denied leave that she requested or to which she was entitled,

Moreover, the record evidence cuts against any possible argument that Reyes was "denied" FMLA benefits.  Undisputedly, Reyes was granted and took FMLA leave beginning in April 2019: "That was the [FMLA leave] approval after we got everything settled down . . . . [FMLA leave] ended up [beginning on April] 18th . . . . Continuous FMLA approved April 16 to July 10." Reyes' Dep. 171:4-12.  Thus, Reyes' FMLA benefits were not "actually withheld."  *See Shann v. Atl. Health Sys.*, 2017 U.S. Dist. LEXIS 186758, at *47-*48, *52 (D.N.J. Nov. 13, 2017) (granting summary judgment in the defendants' favor after finding that the plaintiff's FMLA benefits were not "actually withheld," because, even if the defendants attempted to "dissuade [him] from utilizing FMLA [leave], the plaintiff was granted FMLA leave).  Accordingly, to the extent that Reyes' FMLA Interference Claims, Counts VI and VII, are based on Reyes' 2019 baby-bonding FMLA leave, summary judgment will be granted in Defendants' favor because Reyes received FMLA benefits.

*2.  Defendants will be granted summary judgment as to Reyes' FMLA Retaliation Claim*

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA.  29 U.S.C. § 2615(a)(2).  An FMLA Retaliation Claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell-Douglas* burden-shifting framework").  *Reganato v. Appliance Replacement*, 2017 U.S. Dist. LEXIS 26655, at *8 (D.N.J. Feb. 27, 2017).  This framework requires three steps.

First, a plaintiff must make out a prima facie retaliation claim by demonstrating: "(1) []he invoked an FMLA right[:] (2) []he suffered an adverse employment decision[;] and (3) the adverse

and there is no evidence than any of [the d]efendants' actions which may have been discouraging ever actually prejudiced [the plaintiff]").

action was causally relate to [his] invocation of rights." *Id.* at *9 (citing *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)).  Once the plaintiff has made out a prima facie retaliation claim, "the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory for its actions." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016); *see also Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (explaining that an employer's burden is "relatively light").  Finally, "if the employer produces such a reason, the burden then shifts back to the plaintiff to prove [by a preponderance of the evidence] that the employer's nonretaliatory or nondiscriminatory explanation is merely pretext for the discrimination or retaliation." *Tourtellotte*, 636 F. App'x at 842; *Fuentes*, 32 F. 3d at 763.

Reyes raises an FMLA Retaliation Claim, Count VIII, against Defendants.  He alleges:

> By terminating [him] from his employment on July 5, 201[9][12] and continuing after he received medical clearance to work despite being qualified for open and available positions, and failing to offer position to [him], retaliated against Mr. Reyes for exercising statutory rights and opposing practices made unlawful by the FMLA.

Compl. ¶ 97.

Defendants contend that Reyes' FMLA Retaliation Claim fails at the first step, or alternatively at the third step, of the *McDonnell-Douglas* burden-shifting framework.  Each contention is taken in turn.  Ultimately, the Court agrees with Defendants as to the third step, in that Reyes has not established, by a preponderance of the evidence, that Defendants' nonretaliatory and nondiscriminatory reason for terminating his employment was pretextual.

---

[12] The Complaint states Reyes was terminated in 2018, however, the record evidence provides that the was terminated in 2019.  Accordingly, it is presumed that Reyes intended to provide 2019 as the year of his termination.

a. Summary judgment would be improper based on the *McDonnell-Douglas* burden-shifting framework's first step

First, assuming that Reyes can establish the first two elements for a prima facie retaliation claim, Defendants assert that he cannot establish the third, causation, because there is no factual nexus between Reyes' protected activity—his FMLA leave—and his termination.[13]  *See* Mot. at 6.  "To demonstrate a prima facie case of causation, [a plaintiff] must point to evidence sufficient to create an inference that a causative link exists between [his protected FMLA activity] and [his] termination."  *Lichtenstein*, 691 F.3d at 307.  A causal connection can be established through: "[(1)] an unusually suggestive temporal proximity[; or (2)] a pattern of antagonism coupled with timing."  *Budhun*, 765 F.3d at 258 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (finding that "unduly suggestive" temporal proximity between the protected activity and the adverse action "is sufficient standing alone to create an inference of causality and defeat summary judgment").  Defendants specifically argue that the lack of temporal proximity between Reyes' FMLA leave and his termination demonstrates that Reyes cannot establish causation.[14]

---

[13] The parties dispute only the third element.

[14] Defendants independently raise the possibility that Reyes' FMLA Retaliation Claim could be based on his alleged April 8, 2019 complaint to HR and his July 5, 2019 termination.  Mot. at 7.  Reyes does not respond to this point; thereby, confirming that his FMLA Retaliation Claim connects his termination only to his FMLA leave.  *See generally* Opp'n.  Regardless, Reyes would be unable to establish a prima facie retaliation claim because temporal proximity would be lacking and Reyes has shown no other support demonstrating a causal link between this complaint and his termination.  *See LeBoon*, 503 F.3d at 233 (citation omitted) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.").

Here, Reyes was entitled to FMLA leave for baby-bonding beginning on April 18, 2019 and ending on July 10, 2019. D.E. 41-15 (email approving Reyes' FMLA leave). Reyes was terminated on July 5, 2019. D.E. 41-20 (email confirming notification to Reyes of his last day of employment). For purposes of arguing insufficient temporal proximity, Defendants calculate the start of Reyes' FMLA leave and his termination as the relevant dates. This calculation incorrectly ignores the time after April 18, 2019 when Reyes was actually on FMLA leave. *See Budhun*, 765 F.3d at 258 (finding unusually suggestive temporal proximity where employee was replaced two days after her FMLA leave was set to end); *id.* (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that an employee who was notified of her termination three months after requesting FMLA leave and the day she was scheduled to return to work was sufficient to establish a casual connection).

Instead, temporal proximity is measured from the last day of Reyes' twelve-week FMLA leave, July 10, 2019, through his termination date, July 5, 2019. *See Mackenzie v. Caplan Indus., Inc.*, 2019 U.S. Dist. LEXIS 120515, at *8 (E.D. Pa. July 19, 2019) (measuring temporal proximity from the exhaustion of approved FMLA leave). Thus, the five-day overlap between Reyes' FMLA leave and his termination have sufficient temporal proximity to qualify as unusually suggestive. *See Lichtenstein*, 691 F.3d at 307. Accordingly, there is sufficient record evidence from which a jury could conclude that there is a causal link between Reyes' FMLA leave and his termination, such that summary judgment cannot be granted in Defendants' favor on this basis.

b. Summary judgment is proper based on the *McDonnell-Douglas* burden-shifting framework's third step

Alternatively, Defendants argue that Reyes cannot demonstrate that Defendants' nonretaliatory and nondiscriminatory reason for terminating his employment was a pretext for unlawful retaliation. Mot. at 9. A plaintiff can demonstrate pretext by "point[ing] to some

evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious retaliatory reason was more likely than not a motivating or determinative cause of the employer's action." *Boyd v. Riggs Distler & Co.*, 2022 U.S. Dist. LEXIS 233060, at *20 (D.N.J. Dec. 29, 2020) (citing *Fuentes*, 32 F.3d at 764).

According to Defendants, Reyes was terminated because "XOJet directed his termination after [he] failed to submit his application for employment at XOJet to follow his position there." Mot. at 9. Reyes responds with two arguments casting Defendants' reason as pretextual: (1) he was terminated due to alleged "position elimination," in July 2019, despite his position's continued existence until January 2020; and (2) his termination could not have been directed by XOJet because he was an employee of JAFS, not VisaJet or XOJet. *See* Opp'n at 17-19. Reyes survives summary judgment so long as his provided explanations sufficiently point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence…." *Fuentes*, 32 F.3d at 765 (internal citations and quotations omitted) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 533 (3d Cir. 1992)).

Several facts, taken together, undercut Reyes' argument that Defendants' reason for terminating him was pretextual. Specifically, Reyes admitted that Vista Jet's acquisition of XOJet was announced in late 2018. Pl. Resp. ¶ 35; *see also* D.E. 41-8 at 144:13-17. And that "they [Vista Jet and XOJet] made the announcement that they were gonna [sic] merge and basically move everybody over [from JAFS' Vista Jet team]." Pl. Resp. ¶ 37; Reyes' Dep. at 106:10-12. Reyes "learned about [Vista Jet] leaving [JAFS] before [his] FMLA [leave]. That's why we were basically – everybody [on JAFS' Vista Jet team] started applying for jobs, and I was basically

trying to get any position in there." Reyes' Dep. at 133:6-9. In February 2019, Reyes received a letter of intent to hire letter from XOJet for a full-time client representative position in New York. *Id.* at 135:25-137:16; *see also* D.E. 44-15. Reyes did not accept the position with XOJet nor did he ever apply to any other positions with XOJet. Reyes' Dep. at 138:4-20, 142:25-143:2; *see also* D.E. 41-17 (June 28, 2019 email noting that Reyes "was given a letter of intent from XO[Jet] which he signed but then decided to not sign the offer letter to actually transfer to the new role with XO[Jet]"). Reyes understood that his position as a client representative for Vista Jet at JAFS "was gonna move over…to New York and become XOJET." *Id.* at 142:6-14. Like Reyes, his colleagues at JAFS, who also worked on the Vista Jet team, received offer letters from XOJet. *Id.* at 145:6-13. He recalled that five of his colleagues ended up moving to XOJet in New York. *Id.* at 214:7-12.[15]

When Reyes was notified of his termination, effective July 5, 2019, he was told that "Vista[Jet] was transitioning over [to XOJet], it was expedited a little bit sooner than before, because [Reyes] chose not to accept the offer with XOJet, that his, his current position would be ending . . . ." D.E. 41-10 at 133:13-22. O'Connor also testified that Vist Jet's transition to XOJet was expedited, "September [2019] was when we expected that everything was going to be moved off of the [JAFS] account . . . . Full exit of everything [including planes] was consistently pushed through the 2019 year and kept moving back because of the FAA…." D.E. 44-12 at 263:12-24. Moreover, in an internal JAFS email discussing the decision to terminate Reyes, Mazzola stated that Reyes "was made aware that his current job will be available only until the Vista[Jet] transition to XO[Jet] is complete which was originally expected to be in September." D.E. 41-17. Mazzola

---

[15] Rui Goncalves testified that the goal was to transfer everyone from the Vista Jet team at JAFS to XOJet. D.E. 41-9 at 24:13-21.

also testified that while employed on the Vista Jet team at JAFS, Reyes was considered a "passthrough employee," of a "passthrough employer," Vista Jet, meaning that if Vista Jet no longer needed Reyes, then that would also mean that Reyes was no longer needed by JAFS. *See* D.E. 41-19 at 34:8-25.

 Moreover, despite JAFS' retention of Vista Jet's account until January 3, 2020, that date is not indicative of the last day that Reyes' position could have existed. *See* D.E. 41-19 at 264:1-25. Specifically, O'Connor testified, "I cannot say how long [Reyes] would have – the position would have [been] maintained because we continually reduced our size based on the need at [JAFS] to maintain the [last Vista Jet] aircraft [through January 3, 2020]." *Id.* at 264:21-25.

These facts do not support the inferences that Reyes proposes—*i.e.*, his position existed until January 2020 and XOJet did not have control over his continued employment—because the record wholly supports that Reyes' position at JAFS would no longer exist once Vista Jet's transition to XOJet was complete.

Instead, these facts demonstrate Reyes' inability to point to any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' "proffered legitimate reason[]" for terminating him, such that "a reasonable factfinder could rationally find [it] unworthy of credence…." *Fuentes*, 32 F.3d at 765 (internal citations and quotations omitted) (quoting *Ezold*, 983 F.2d at 533). Thus, Reyes has failed to raise a dispute of material fact as to whether Defendants' reason for his termination was pretextual.

Accordingly, summary judgment will be entered in Defendants' favor as to Reyes' FMLA Retaliation Claim, Count VIII.[16][17]

### B. Supplemental Jurisdiction Over the Remaining State Claims Will be Declined

Reyes asserts five state claims, brought under the NJLAD, Counts I through V, over which the Court has only supplemental jurisdiction. Because Defendants are entitled to summary judgment on Reyes' federal claims, brought under the FMLA, Counts VI through VIII, there will be no federal claims remaining in the Complaint.

A district court may decline to exercise supplemental jurisdiction over state claims if the "court has dismissed all claims over which it has original jurisdiction." *Barry v. Pennsauken Bd. of Educ.*, 2018 U.S. Dist. LEXIS 191395, at *8 (D.N.J. Nov. 7, 2018) (citing 28 U.S.C. § 1367(c)(3)). Typically, a district court "'must decline' to exercise supplemental jurisdiction in

---

[16] Defendants assert that Reyes is not entitled to emotional distress or pain and suffering damages under the FMLA. Mot. at 27. They assert that the statutory text of the FMLA does not provide a basis for compensatory damages for past and future pain, suffering, or emotional distress nor for punitive damages. *Id.* at 27-28 (citing *Brown v. Nutrition Mgmt. Servs. Co.*, 2010 U.S. App. LEXIS 5535, at *5 n.3 (3d Cir. Mar. 17, 2010); *Quinones v. Lehigh Valley Health Network, Inc.*, 2015 U.S. Dist. LEXIS 127421, at *12-13 (E.D. Pa. Sept. 22, 2015); *Lloyd v. Wyo. Valley Health Care Sys.*, 994 F. Supp. 288, 291 (M.D. Pa. 1998); *Fabian v. St. Mary's Med. Ctr.*, 2017 U.S. Dist. LEXIS 128341, at *16-18 (E.D. Pa. Aug. 11, 2017)). Reyes concedes that he is not entitled to such damages, except with respect to punitive damages. Opp'n at 28. The Court notes that the FMLA "does not mention non-economic or punitive damages, and case law 'supports' the position that such damages are unavailable as a matter of law under the FMLA." *Fisher v. Schott*, 2014 U.S. Dist. LEXIS 162436, at *13-14 (D.N.J. Nov. 19, 2014) (citing *Zawadowicz v. CVS. Corp.*, 99 F. Supp. 2d 518, 540 (D.N.J. 2000) ("Plaintiff concedes that neither punitive damages nor damages for physical and emotional distress are available under the FMLA . . . . Case law further supports this position.")). However, because summary judgment will be entered in Defendants' favor as to Reyes' FMLA claims, the issue of damages is moot.

[17] Erickson and O'Connor also assert that individual liability on Reyes' FMLA claims cannot attach to them. Mot. at 25-26. They argue that a plaintiff cannot maintain FMLA claims against individual defendants where the corresponding FMLA claims against the employer defendant fail as a matter of law. *Id.* at 26. Because Reyes has no surviving FMLA claims against JAFS, any individual liability for those same claims cannot attach against Erickson and O'Connor.

such circumstances 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'"  *Id.* at *8-9 (quoting *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017)).

 Here, there is no affirmative justification for retaining supplemental jurisdiction over Reyes' state claims.  Reyes' suit, containing primarily state claims, was originally filed in state court and, except for the pending summary judgment motion, there has been no motion practice before this Court.  *See id.* at *9 (declining to exercise supplemental jurisdiction over a case originally filed in state court after the FMLA claims were dismissed and finding that the case had "from its inception" "been primarily a New Jersey state law case).  Therefore, the Court will decline to exercise supplemental jurisdiction over Reyes' remaining state claims.  Accordingly, Reyes' remaining state claims, brought under the NJLAD, Counts I through V, will be remanded to state court.

## IV. CONCLUSION

 For the reasons set forth above, Defendants' summary judgment motion will be **GRANTED** with respect to Reyes' federal FMLA claims, Counts VI through VIII.  However, with respect to Reyes' state NJLAD claims, Counts I through V, the Court will decline to exercise supplemental jurisdiction, and will **REMAND** this suit to the Superior Court of New Jersey, Bergen County.  An appropriate Order accompanies this Opinion.


Dated: August 23, 2023

            _Evelyn Padin_

            Evelyn Padin, U.S.D.J.